**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| ANGELINA JEANNIE ANDERSON, | ) | CASE NO. 1:21-CV-01471-DAR |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY | ) | CARMEN E. HENDERSON |
| ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |

## I.     Introduction

Plaintiff, Angelina Anderson, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Anderson's Statement of Errors and AFFIRM the Commissioner's decision.

## II.     Procedural History

On April 26, 2019, Anderson filed an application for SSI, alleging a disability onset date of March 15, 2016. (ECF No. 7, PageID #: 204, 226). The application was denied initially and upon reconsideration, and Anderson requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 146, 173). On August 4, 2020, an ALJ held a hearing, during which Anderson, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 65). On September 2, 2020, the ALJ issued a written decision finding Anderson was

1

not disabled. (ECF No. 7, PageID #: 40). The ALJ's decision became final on June 3, 2021,

when the Appeals Council declined further review. (ECF No. 7, PageID #: 34).

On July 29, 2021, Anderson filed her Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 12, 13).

Anderson asserts the following assignments of error:

> (1) The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived her authority from Andrew Saul is constitutionally defective.

> (2) The ALJ erred when she relied on the prior ALJ's RFC regarding Anderson's psychological impairments, a decision which was issued by an ALJ who had not been properly appointed.

> (3) The ALJ erred when her RFC failed to consider the effect of the combination of Anderson's severe impairments on her ability to engage in substantial gainful activity on a full-time and sustained basis.

> (4) The ALJ erred in that her evaluation of Anderson's symptoms was in violation of Social Security Ruling 16-3p.

(ECF No. 9 at 1).

## III.   Background

### A.      Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Anderson's hearing:

> At the August 4, 2020 hearing, the claimant testified she lives with her husband and daughter. She testified she has a driver's license and she graduated from high school. She testified she does not prepare meals and she does not like to go shopping. She testified she could perform self-care. She testified that on a typical day, she takes her medications, feeds the dog, and her counselor calls her. She testified that sometimes she struggles to get through the day. She testified she was disabled because she could not do the job right. She testified she took medications for nightmares. She testified she has pain in her lower back. She testified that she could walk her dog for an hour. She testified that she has trouble holding

onto objects. She testified she has trouble with stairs. She testified she has problems kneeling and crawling because of her back. She testified that she does not like to be in crowds. She testified that her left hand [is] stuck in a certain position. She testified that with her left hand she has problems holding a bowl. She testified she also has problems with her fingers. She testified she has problems dressing because of her left hand.

(ECF No. 7, PageID #: 50).

**B.        Relevant Medical Evidence**

The ALJ also summarized Anderson's health records and symptoms:

Records from Ohio Guidestone on January 10, 2019 reflects the claimant was last seen in April 2018 (Exhibit B1F). She reported she had been getting out of the house, but she was still not getting along with her mother-in-law. Her sleep and appetite were okay. She reported she was having breakdowns. She was very upset and reported she had been off her medication for six months or more. She reported she has a daughter with special needs. She cries herself to sleep every night. She had thoughts of overdosing on pills yesterday. Examination noted she was alert and cooperative. She was neatly dressed and she maintained good eye contact. Her speech was fluent. Thought process was spontaneous. Her associations were normal. She had fair judgment and insight. She was oriented to person, place, time and situation. Recent and remote memories were impaired. Attention and concentration were normal. She was diagnosed with PTSD and persistent mood (affective) disorder.

Mental health records from MetroHealth reflect on February 18, 2019 that the claimant presented with a past psychiatric history of PTSD and mood disorder (Exhibit B2F). The claimant reported she could not keep a job because she could not learn new things and she cannot remember complex tasks. She reported she had "OCD" and it causes many problems. She stated she lost her last job in cleaning because she was obsessed with doing the same things. She reported feeling sad and depressed. She endorsed having some symptoms of depression, difficulty sleeping, feelings of worthlessness, sometime hopelessness, low energy, decreased interests in somethings she has been doing, feelings of guilt, feels snippy lately, and irritable. She feels anxious around crowds and she has panic attacks. She endorsed PTSD symptoms. On May 9, 2019, she reported her medications seemed to be working well now and she was stabilizing.

Mental status examination on June 10, 2019 noted she was well groomed and cooperative. She was oriented to time, person and place. Thought process was logical and organized. There was no evidence of paranoia or delusions, but she was preoccupied with her "autism behavior – rituals, some rigidity". There was no evidence of perceptual disturbance. Her mood was dysphoric and her affect was constricted. Her attention and concentration were sustained. Recent and remote memories were within normal limits. She had good judgment and fair insight. It was noted the claimant was stabilizing. She was diagnosed with PTSD, obsessive compulsive disorder, generalized anxiety disorder, and unspecified depressive disorder.

Pharmacy note on May 6, 2019 noted the claimant called regarding her Prazosin directions (Exhibit B3F). She was not taking the medication as prescribed. She inquired about continuing to take two pills at bedtime because it was helping her nightmares and it was helping her deal with her mother-in-law who was mentally abusing her.

Mental health records from MetroHealth noted the claimant was seen on September 9, 2019 for her PTSD (Exhibit6 B8F). The claimant reported her current medication regimen was working. She reported that her home life was not stable. She endorsed nightmares. She denied suicidal or homicidal ideations and auditory or visual hallucinations. She denied paranoia. She reported marijuana use. On September 18, 2019, the claimant reported that she felt trapped. The claimant reported on October 11, 2019 that her husband was on disability and her mother-in-law has medical issues. She reported she cleans the house, takes care of people and drives them around. She reported her daughter has special needs and she is on disability. She endorsed obsessive-compulsive traits. On November 7, 2019, the claimant reported she was on the waiting list for her autism spectrum disorder (ASD) evaluation. She reported she had some improvement in her home life situation. The claimant reported on December 17, 2019 that she was still having problems with her mother-in-law. Mental status examination on January 17, 2020 noted she was well groomed and cooperative. She was oriented x3. Thought process was logical and she had flight of ideas. There were no abnormal processes. Judgement and insight were fair. Recent and remote memories were within normal limits, but she was sometimes forgetful. She sustained her attention span and concentration. Her mood was euthymic and her affect was full. She was diagnosed with mood disorder. On May 11, 2020, the claimant had a

4

"telemed" visit for her PTSD and generalized anxiety disorder. The claimant reported she was doing "ok" and that the COVID-19 situation has been "very stressful". She reported she has been doing many chores at home and she has no energy. She reported she gets irritable and snippy.

Updated records from Ohio Guidestone reflect on October 11, 2019 that the claimant was crying because her husband provided mixed messages (Exhibit B9F). She attempts deep breathing to calm her system. She agreed to listen to meditative music, making dog's dinner, watching a happy movie, and utilizing coloring to reduce her symptoms. On December 23, 2019, the claimant reported that she had a little bit of improvement, but she was struggling with current home situation. She reported that her mood has been up and down. The claimant reported on May 21, 2020 that she created a budget for her and her husband. She also made a chore chart for her younger daughter. On June 24, 2020, the claimant was seen at a local park and she was in an agitated and anxious mood. She was performing a lot of household chores and she was having issues with her husband. She seemed to be agitated by how her daughter and her boyfriend's daughter were acting. She was diagnosed with PTSD and persistent mood disorder. . . .

Paul A. Schefft, M.D., performed a consultative internal medicine examination on February 20, 2020 (Exhibit B6F). Examination noted she ambulated with a normal gait. She appeared stable at station and comfortable in the supine and sitting positions. Intellectual functioning appears normal. The lungs were clear to percussion and auscultation without wheezes, rales or rhonchi. She had a regular heart rate and rhythm with no murmur, gallop or rub. Examination of the hands reveals tenderness of the wrists bilaterally, particularly the left wrist secondary to remote trauma. There was no redness, warmth or swelling. There was no atrophy and she was able to make a normal right fist. The left fist is hooked. She was able to write with the dominant hand and pick up coins with either hand without difficulty. There was tenderness of the left hip and left knee to palpation. There was no hip joint tenderness, warmth, swelling or crepitus. Cervical spine examination revealed no tenderness over the spinous processes or evidence of paravertebral muscle spasm. Dorsolumbar spine examination reveals normal curvature with evidence of paravertebral muscle spasm and tenderness to percussion of the dorsolumbar spinous processes. There was decreased range of motion with pain on movement of the spine. Straight leg raise was normal. Cranial nerves were intact. Sensory modalities were well preserved. She was unable to walk on heels, but she was able to

walk on toes. She performed a very poor tandem gait and a shallow squat. The impression was dorsolumbar strain, left wrist tenderness with a hooked fist, left knee pain, and left hip pain.

(ECF No. 7, PageID #: 49–52).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: left hand hook fist, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD) and obsessive-compulsive disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: She could frequently push or pull with the left upper extremity. She could occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds. She can frequently stoop, kneel, crouch and crawl. She can frequently handle and finger with the left upper extremity. She can perform simple routine tasks with simple short instructions. She can make simple decisions. She can tolerate occasional work place changes. There should be no fast pace production quotas. She can have occasional and superficial interaction with coworkers and supervisors. There should be no public interaction.

(ECF No. 7, PageID #: 46–47, 49).

## V.    Law & Analysis

### A.        Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B.**        **Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.      Discussion

Anderson raises four issues on appeal. First, she argues that she did not receive a constitutional hearing and decision because Commissioner Saul's appointment violated the separation of powers. Second, Anderson asserts that the ALJ erred by relying on the prior ALJ's decision because the prior ALJ had not been properly appointed. Third, she suggests that the ALJ erred by failing to consider the combination of her impairments when considering her ability to engage in substantial gainful activity. Finally, Anderson alleges that the ALJ erred in evaluating her subjective allegations.

### 1.      Anderson Lacks Standing to Challenge the ALJ's Decision Based on Alleged Separation of Powers by the Commissioner

Anderson asserts that "[b]ased on the fact that Andrew Saul's tenure as Commissioner of SSA was unconstitutional, and he was Commissioner at the time of the ALJ and Appeals Council decisions, this matter should be remanded for a *de novo* hearing." (ECF No. 9 at 10). Anderson argues that because Acting Commissioner Saul was unconstitutionally appointed, the authority he delegated to the ALJ to hear and ultimately determine Anderson's application for disability benefits was also unconstitutional. In support of this argument, Anderson cites to *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020) for the proposition that Saul's appointment under 42 U.S.C. § 902(a) violates the separation of powers because it limits the President's authority to remove the Commissioner without cause. The Commissioner does not dispute that the relevant removal provision "violates the separation of powers to the extent it is construed as limiting the

8

President's authority to remove the Commissioner without cause." (ECF No. 12 at 9 (citations omitted)). Instead, the Commissioner argues that Anderson is not entitled to relief because "even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused her harm." (ECF No. 12 at 9 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1787–89 (2021)). Specifically, the Commissioner argues that Anderson cannot show harm to support her claim for relief because the ALJ's appointment was ratified by an Acting Commissioner who was not subject to the challenged removal restriction, and because Anderson cannot show that the removal restriction caused the denial of her benefits.

Before the Court may address the substance of this argument, the Court must first determine whether Anderson has standing to challenge the alleged unlawful removal provision. The Commissioner does not specifically contest Anderson's standing. However, even if the parties do not challenge standing, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd*., 556 F.3d 459, 465 (6th Cir. 2009) (citations omitted).

To establish Article III standing, a plaintiff must show that she has suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations omitted) (citations and internal quotation marks omitted). "[F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant, not to the provision of law that is challenged." *Collins*, 141 S. Ct. at 1779 (internal quotation marks and citation omitted).

First, Anderson argues that she has standing because the commissioner "failed to proffer any argument" that he lacked standing. (ECF No. 13 at 3). However, "[a]s a jurisdictional requirement, standing . . . cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) (emphasis added). Next, Anderson argues that she has standing as a "disability claimant who [] received an unfavorable decision during the administrative process[.]" (ECF No. 13 at 4 (citing *Brinkman v. Kijakazi*, 2021 WL 4462897, at *2 (D. Nev. Sept. 9, 2021) and *Sylvia v. Kijakazi*, 2021 WL 4692293, at *3 (N.D. Tex. Sept. 13, 2021))). Contrary to Anderson's argument, in *Brinkman*, the court found that the plaintiff lacked standing to bring the constitutional challenge by failing to "allege facts that support a finding that her injury, the denial of disability benefits, can be or is traced to the conduct of the SSA Commissioner." 2021 WL 4462897, at *2. Citing to *Collins* and *Seila Law*, the court explained: "Because Plaintiff offers nothing that traces the decision by the ALJ in her case to any alleged injurious conduct by the SSA Commissioner, she has not demonstrated traceability and her constitutional violation claim fails for lack of standing." *Id*. Thus, *Brinkman* does not support Anderson's argument.

In *Sylvia*, however, the court found that "[p]laintiff's separation-of-powers claim is both traceable and redressable such that she has standing to pursue it." *Sylvia A. v. Kijakazi*, No. 5:21-CV-076-M-BQ, 2021 WL 4692293, at *4 (N.D. Tex. Sept. 13, 2021), *report and recommendation adopted,* No. 5:21-CV-076-M-BQ, 2021 WL 4622528 (N.D. Tex. Oct. 7, 2021). The court explained that the traceability requirement was met "[b]ecause the ALJ derives authority directly from the Commissioner, and the ALJ's disability determination becomes the Commissioner's final decision." 2021 WL 4692293, at *3. In so finding, the court observed that "'[i]f the removal protections afforded the Commissioner violate the constitutional requirement

of separation of powers, the Commissioner has no authority to delegate.'" *Id.* (alteration in original) (citations omitted). *Sylvia*'s conclusion, however, directly conflicts with the Supreme Court's conclusion in *Collins* that the unlawfulness of a similar removal provision did not strip the relevant executive officer "of the power to undertake the other responsibilities of his office." 141 S. Ct. at 1788 n.23 (citing *Seila Law*, 140 S. Ct. at 2207–11). Accordingly, this Court does not find *Sylvia* to be persuasive. *See Rives v. Comm'r of Soc. Sec.*, No. 1:20-CV-02549, 2022 WL 1076216, at *22 (N.D. Ohio Feb. 4, 2022), *report and recommendation adopted*, No. 1:20CV2549, 2022 WL 681273 (N.D. Ohio Mar. 8, 2022); *Reese v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-2385, 2022 WL 1090538, at *17 (N.D. Ohio Jan. 31, 2022), *report and recommendation adopted*, No. 5:20CV2385, 2022 WL 831122 (N.D. Ohio Mar. 21, 2022).

The mere receipt of an unfavorable decision is not sufficient to establish harm traceable to the alleged unlawful conduct. The majority of courts having examined this issue have concluded that a party similarly situated to Anderson lacks standing by failing to allege facts supporting that the denial of disability payments could be traced to the conduct of the Commissioner of the Social Security Administration. *See Walker v. Comm'r of Soc. Sec. Admin.*, No. 4:20-CV-02506-CEH, 2022 WL 1266135, at *6 (N.D. Ohio Apr. 28, 2022) (collecting cases).

Therefore, Anderson has failed to show compensable harm connected to the unconstitutional removal provision. Anderson asserts that "based on the fact that Andrew Saul's tenure as Commissioner of SSA was unconstitutional, and he was Commissioner at the time of the ALJ and Appeals Council decisions, this matter should be remanded for a *de novo* hearing." (ECF No. 9 at 10). However, "the fact that the removal restriction in § 902(a)(3) is unconstitutional does not entitle [Anderson] to a remand for a new hearing and decision in his

case." *Klapp v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-02850-JDG, 2022 WL 310228, at \*15 (N.D. Ohio Feb. 2, 2022). As the Supreme Court in *Collins* explained, "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office" because the removal restriction was unconstitutional. 141 S. Ct. at 1788.

Anderson also asserts that "[t]he ALJ in this matter decided this case based on regulations promulgated by the Commissioner when he had no authority to issue the same. . . . This means that a presumptively inaccurate legal standard was utilized by both the ALJ and the Appeals Council to adjudicate this claim." (ECF No. 9 at 9). However, Anderson fails to explain which regulations the Commissioner promulgated that the ALJ used to decide her case. Moreover, Anderson's argument that the Commissioner had no authority to carry out the functions of office because the removal restriction was unconstitutional was rejected by the Supreme Court in *Collins*. 141 S. Ct. at 1788.

In her reply brief, Anderson asserts that the Commissioner "modified the way in which musculoskeletal impairments are evaluated (DI 34121.013 and DI 34121.015)." (ECF No. 13 at 7). However, POMS DI 34121.013 and 34121.015 became effective in April 2021 and Anderson fails to explain how the changes impacted her 2019 application or 2020 hearing and decision. Anderson also asserts that "while Mr. Saul was Commissioner, he implemented changes in HALLEX which modified the way in which decisions were written (I-2-3-20 in effect July 17, 2019)." (ECF No. 13 at 7). However, HALLEX I-2-3-20, sets forth ways in which the Agency notifies claimants that it received their notice of hearing forms; it does not modify the way the ALJs write their decisions. *See* Social Security HALLEX I-2-3-20, Acknowledgment of Notice of Hearing, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-3-20.html (last visited 5/17/2022). Nonetheless, Anderson has not argued how those changes made it more or less likely that her

application would be denied. Finally, Anderson argues that she did not receive "constitutionally valid" decisions by the ALJ and the Appeals Council. Anderson fails to explain the basis for these arguments. To the extent Anderson again asserts a challenge to Mr. Saul's delegation authority, this challenge fails under *Collin*s, as discussed above.

None of Anderson's assertions describe the type of compensable harm stemming from an unconstitutional removal provision that was described in *Collins*. Anderson does not state that when her application was pending the President was unable to remove Saul from office or believed that he was unable to do so. *Collins*, 141 S. Ct. at 1789. In fact, Anderson admits in her brief that when President Biden sought advice from DOJ as to whether he could remove Saul as Commissioner, DOJ confirmed that he could. President Biden then immediately removed Saul without issue. Without a harm traceable to an unlawful action by the Commissioner, Anderson does not have standing to challenge the constitutionality of § 902(a)(3). *See Rives*, 2022 WL 1076216, at *22–23.

Accordingly, Anderson's constitutional challenge fails because she "has not described compensable harm due to the unconstitutional removal provision in § 902(a)(3) under which Saul served as Social Security Commissioner." *Lynch v. Comm'r of Soc. Sec.*, No. 1:21CV0556-JDG, 2022 WL 614777, at *17 (N.D. Ohio Mar. 2, 2022); *Miley*, 2021 WL 6064754, at *1 ("[Plaintiff] lacks standing to contest the constitutionality of the ALJ's decision based on the president's removal authority.").

### 2. Anderson's Argument Regarding the Prior ALJ's Decision is Without Merit

Anderson additionally argues that the ALJ erred when she relied on the prior ALJ's decision because the prior ALJ was unconstitutionally appointed. The relevant facts here are that Anderson initially applied for disability and a different ALJ denied her application for benefits.

Anderson did not appeal the decision. Then, Anderson filed a new application for disability, which is the one relevant to the matter before the Court. In this decision, a new ALJ denied Anderson's application for benefits. Importantly, the new ALJ did not adopt the findings of the previous ALJ. The new ALJ specifically found that Anderson had submitted new and substantial evidence and she was not bound by the previous decision. (ECF No. 7, PageID #: 44). Anderson's argument that the new ALJ "relied" on the previous ALJ's decision is instead based on the fact that the state agency medical reviewers adopted the prior ALJ's findings when reviewing the medical record for Anderson's current application. There are two issues with this argument.

First, as the current ALJ made clear, she did not adopt the prior ALJ's decision. The current ALJ decided that new evidence precluded adopting that finding. The fact that the medical reviewers adopted the findings and the ALJ found their opinions persuasive does not mean that the current ALJ adopted the prior ALJ's decision. The Court fails to understand how Anderson can argue the prior ALJ's decision is relevant to this decision. Second—and more importantly— Anderson failed to develop this argument in a way that allows the Court to address it. After laying out the standard for adopting a prior ALJ's decision, Anderson recited the above-mentioned facts and then stated:

> At the time of the July 2015 decision, ALJ Bruntz had not been properly appointed. *See* Lucia v. S.E.C, 138 S.Ct. 2044 (2018). . . . Reliance on the prior ALJ's findings regarding the RFC violated Anderson's constitutional rights and was harmful error in this matter. This matter should, therefore, be remanded to correct this error.

(ECF No. 9 at 11). It is unclear why Anderson believes that the prior ALJ, ALJ Bruntz, had not

been properly appointed as she never actually explains her argument.[1] "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (alterations in original) (citations and quotation marks omitted). Moreover, to the extent this argument is an extension of Anderson's prior argument regarding the allegedly unconstitutional removal provision and Saul's appointment as commissioner, as discussed above, Anderson lacks standing to bring this claim. Therefore, the Court concludes that Anderson's argument is without merit.

### 3. The ALJ Properly Considered the Combined Effect of all of Valley's Impairments

Anderson next brings multiple challenges to the ALJ's RFC determination that the Court will take in turn. First, Anderson argues that the ALJ failed to consider her obesity in combination with her other impairments. SSR 19-2p "provides guidance on how [SSA] establish[es] that a person has a medically determinable impairment of obesity" and how an ALJ should "evaluate obesity in disability claims." SSR 19-2P, 2019 WL 2374244, at *1. In relevant part, the regulation states that the RFC should account for "the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at *4. Additionally, SSR 02-1P requires an ALJ to consider obesity at all

---

[1] In her reply brief, Anderson for the first time argues "In adopting these findings, the ALJ also failed to provide a fresh look at the psychological evidence in this matter as required by *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018)." (ECF No. 13 at 1). Although she mentioned that an ALJ must provide a fresh look at psychological evidence in her original brief, Anderson did not argue that the ALJ in her case failed to do so. "[I]t is well-established that new substantive issues cannot be raised in a reply brief." *Colvin v. Comm'r of Soc. Sec.*, No. 4:18CV1249-JRA, 2019 WL 4743624, at *4 (N.D. Ohio Sept. 30, 2019) (citations omitted). Thus, this argument was waived. *See id.*

stages of the decision. SSR 02-1P, 2002 WL 34686281, at *1. The claimant has "the burden of showing specifically how [her] obesity, in combination with other impairments, limited [her] ability to a degree inconsistent with the ALJ's RFC determination." *Foss v. Comm'r of Soc. Sec.*, No. 1:16CV1907, 2017 WL 2912524, at *8 (N.D. Ohio June 20, 2017) (alterations in original) (citations omitted), *report and recommendation adopted* by 2017 WL 2908857 (N.D. Ohio July 7, 2017).

Here, the ALJ concluded that Anderson's obesity was not a severe impairment, stating:

> Pursuant to SSR 19-2p, obesity is not a listed impairment. However, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing. Moreover, obesity may or may not increase the severity of functional limitations of other impairments. Upon review of the facts of this case, the claimant's obesity does not cause another impairment or combination of impairments to rise to listing-level severity. The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

(ECF No. 7, PageID #: 47). The ALJ did not mention Anderson's obesity anywhere else in the opinion. Anderson asserts that the ALJ failed to consider her obesity in combination with her other impairments and this failure was error. The Commissioner responds that the ALJ properly concluded that Anderson's obesity was not severe, the ALJ appropriately found that Anderson's obesity in combination with her other impairments did not rise to listing-level severity, and Anderson did not meet her burden demonstrating otherwise. The Court agrees.

Although it is true that SSR 02-1p requires the ALJ to consider a claimant's obesity at all stages, "SSR 02-1p, . . . 'does nothing to relieve [a claimant] of the burden of marshaling competent medical opinion[s] and evidence to show *specifically* how her obesity exacerbated her other impairments, or interacted with them, to render her incapable of all suitable work.'" *Wein*

*v. Comm'r of Soc. Sec.*, No. 16-CV-11816, 2017 WL 4211048, at *5 (E.D. Mich. Aug. 7, 2017) (alterations in original) (citations omitted), *report and recommendation adopted,* No. 16-11816, 2017 WL 4176740 (E.D. Mich. Sept. 21, 2017). As such, courts have rejected arguments that the ALJ did not properly consider a claimant's obesity where there is "scant" evidence of obesity in the record. *See Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("Given Nejat's failure to list obesity in his application and the scant evidence of obesity in the record, the ALJ properly evaluated this alleged condition."); *Young v. Comm'r of Soc. Sec.*, No. 3:09 CV 1894, 2011 WL 2182869, at *9 (N.D. Ohio June 6, 2011) ("Therefore, because there is not a single diagnosis of obesity in the record, and because Plaintiff failed to furnish evidence as to how his obesity affected his ability to work, the ALJ was not required to give obesity any express consideration in the report."). For example, in *Wein v. Commissioner of Social Security*, the court rejected a claimant's argument that that the ALJ did not properly consider her obesity where the ALJ found her obesity was not severe, she did not complain of any specific limitations related to her obesity at her hearing, she did not list obesity in her application, and she did not assert that her obesity caused her any additional limitations than those assessed by the ALJ. 2017 WL 4211048, at *5.

Similarly, here, there is scant evidence of obesity in the record. Anderson did not list obesity as one of her medical conditions in her disability report or application.[2]  She did not mention obesity at her hearing—discussing only mental limitations and issues with her legs, back, and left hand. In fact, Anderson specifically stated she was disabled due to mental limitations. (ECF No. 7, PageID #: 78). In her brief to this Court, Anderson did not assert that

---

[2] The Court notes that Anderson did not list obesity in her application for disability or discuss obesity at the hearing. It appears, therefore, that the ALJ considered obesity on her own.

her obesity caused her any functional limitations that the ALJ did not account for. She did not cite any medical evidence of obesity, simply listing evidence of her other impairments. Anderson, thus, has not met her burden showing that her obesity limited her ability to a degree inconsistent with the ALJ's determination. Therefore, "the ALJ's failure to categorize Plaintiff's obesity as a severe impairment or to consider Plaintiff's obesity at the remaining steps of the sequential evaluation process does not constitute reversible error." *Wein*, 2017 WL 4211048, at *5. The Court concludes, therefore, that Anderson's first sub-argument is without merit.

Second, Anderson asserts that the ALJ's determination that Anderson did not meet Listing 12.00's—Mental Disorders—subpart B criteria was not supported by substantial evidence. The ALJ considered Listing 12.04, 12.06, and 12.15. Each of these Listings have different subpart A criteria, but the same subpart B and C criteria. The ALJ concluded that Anderson did not meet either of these subparts. Anderson argues that she meets the subpart B criteria. Subpart B requires:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information
> 2. Interact with others
> 3. Concentrate, persist, or maintain pace
> 4. Adapt or manage oneself

20 C.F.R. § 404 Subpart P, App. 1, § 12.00 (citations omitted).

The ALJ considered all of the medical record and concluded that Anderson did not meet the subpart B criteria. She determined that Anderson had only moderate limitations in each of the categories. In the area of understanding, remembering, or applying information, the ALJ concluded that despite alleging difficulty remembering and understanding, Anderson stated she could take medications and drive. (ECF No. 7, PageID #: 48). She also reasoned that Anderson

provided information about her health, described her prior work history, and responded to questions from medical providers. (ECF No. 7, PageID #: 48). Regarding interacting with others, the ALJ explained that Anderson lives with others and medical providers described her as pleasant and cooperative. (ECF No. 7, PageID #: 48). Medical records also noted that Anderson appeared comfortable during appointments. (ECF No. 7, PageID #: 48). In regard to concentrating, persisting, or maintaining pace, the ALJ noted that Anderson stated that she had trouble completing tasks but explained that Anderson drove and managed funds. (ECF No. 7, PageID #: 48). Further, the ALJ reasoned that there was no evidence of distractibility or an inability to complete testing. (ECF No. 7, PageID #: 48). As for adapting or managing oneself, the ALJ noted that Anderson stated she could handle self-care and personal hygiene, care for pets, and care for others. (ECF No. 7, PageID #: 48). The ALJ also stated that the objective evidence demonstrated that Anderson had appropriate grooming and hygiene and normal mood and effect. (ECF No. 7, PageID #: 48).

Anderson argues that "[n]o evidence was proffered which would support the ALJ's contention that Anderson had only moderate limitations." (ECF No. 9 at 16). She further asserts that "[f]inding only moderate limitations was an incorrect interpretation of the evidence as documented in this matter and requires a remand of this matter." (ECF No. 9 at 16). In support of her argument, Anderson copy and pasted the summary of her mental impairment evidence from the statement of the facts in her brief. (ECF No. 9 at 13–15). According to Anderson, this recitation of the evidence "documented that Anderson was seriously limited in her ability to independently, appropriately, effectively, and on a sustained basis, understand, remember or apply information, interact with others, concentrate, persist, and maintain pace, and adapt or manage herself." (ECF No. 9 at 16). However, Anderson misunderstands the standard on this

appeal. For her argument to be successful, Anderson must show that the ALJ's decision is not supported by substantial evidence. "[A] claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [the claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). The Court also notes that Anderson's assertion that the ALJ did not provide any support for her conclusion is inaccurate, as detailed above. Additionally, the Court determines that despite the evidence Anderson showcases, the ALJ's decision is supported by substantial evidence. Specifically, the ALJ relied on statements from the medical providers that Anderson was pleasant, cooperative, appropriately groomed, and had a normal mood. She also reasoned that Anderson drove, managed funds, cared for pets, and cared for others. The ALJ noted that the medical record did not note distractibility or an inability to complete testing. The ALJ considered all of the evidence, concluded that Anderson had no more than moderate limitations in the four broad areas of mental functioning, and gave reasons for each determination. Therefore, the Court concludes that Anderson's second sub-argument is without merit.

Finally, Anderson argues that the ALJ failed to consider the combination of her impairments. The Social Security Act requires an ALJ to "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523(c). An ALJ's "analysis of a claimant's combined impairments is sufficient where the judge referred to a 'combination of impairments' in deciding the claimant did not meet the listings and all of the claimant's impairments were discussed individually in the decision." *Austin v. Comm'r of Soc. Sec.*, 714 F.

App'x 569, 575 (6th Cir. 2018) (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)). Here, that is exactly what the ALJ did.

The ALJ stated that Anderson did not have "an impairment or combination of impairments" that met a listing. (ECF No. 7, PageID #: 47). She also specifically considered Anderson's autism, hooked left fist, and obesity and concluded they were not severe impairments. (ECF No. 7, PageID #: 46–47). The ALJ then thoroughly discussed Anderson's PTSD, persistent mood disorder, obsessive-compulsive disorder, generalized anxiety disorder, and unspecified depressive disorder. (ECF No. 7, PageID #: 50). Thus, the ALJ sufficiently considered the combination of Anderson's impairments.[3]

Notably, as part of her argument to the contrary, Anderson asserts that the ALJ failed to discuss the fact that Anderson had difficulty holding onto objects and the fingers on her left hand did not cooperate. However, this is false. In discussing her hearing testimony, the ALJ stated that Anderson testified that she has trouble holding onto objects, her left hand gets stuck in certain positions, and she has problems with her fingers. (ECF No. 7, PageID #: 50). Anderson also stated that the ALJ did not discuss all of her mental impairment symptoms. However, the ALJ thoroughly discussed her mental impairments, and the court fails to see which allegations the ALJ did not discuss. Moreover, an ALJ is not required "to discuss every piece of evidence in the record to substantiate [her] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *Jenkins v. Colvin*, No. 5:15-CV-1165, 2016 WL 825909, at *9 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to *consider* all of the evidence in the record, [s]he is not required

---

[3] The Court notes that, as discussed above, the ALJ was not required to discuss the combination of Anderson's obesity with her other impairments.

21

to *discuss* each item of evidence in her opinion." (citations omitted)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 WL 815625 (N.D. Ohio Mar. 1, 2016). The Court is satisfied that the ALJ appropriately considered all of the evidence in the record, including the combined effect of her impairments. Anderson's argument is without merit.

### 4.       The ALJ Appropriately Considered Anderson's Subjective Allegations

Anderson's final argument is that the ALJ violated SSR 16-3P in evaluating her subjective symptoms. In determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. A claimant's subjective complaints "can support a claim for disability[] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). An ALJ, however, "is not required to accept a claimant's subjective complaints." *Id.* at 476 (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8.  The ALJ "must clearly state [her] reasons" for discounting or rejecting a claimant's subjective complaints. *Harper v. Comm'r of Soc. Sec.*, No. 1:20-CV-1304, 2021 WL 2383833, at *11 (N.D. Ohio May 25, 2021) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)), *report and recommendation adopted*, No. 1:20-CV-1304, 2021 WL 2381906 (N.D. Ohio June 10, 2021).

Anderson alleges that the "ALJ failed to discuss the testimony or statements made by

Anderson beyond a perfunctory boilerplate paragraph." (ECF No. 9 at 21). The Commissioner responds that the ALJ thoroughly considered Anderson's medical record and subjective complaints and concluded that the record evidence, Anderson's daily activities, and the opinion evidence did not support her statements.[4] The Court agrees.

As an initial matter, the Court notes that much of Anderson's argument is inaccurate. Anderson states that "the extent of the ALJ's discussion of [her] testimony was stating that Anderson's statements were not entirely consistent with the evidence in light of the reports of the objective evidence of record." (ECF No. 9 at 20). She states that the ALJ only gave "brief discussion" of her testimony. However, at step four, the ALJ included a paragraph summarizing Anderson's testimony and then repeatedly included her reported symptoms in her discussion of the medical evidence. Anderson additionally claims that the ALJ only gave "boilerplate" reasoning for discrediting Anderson's testimony. Again, this is a false statement. The ALJ gave the following lengthy explanation:

> The claimant's allegations are partially consistent with respect to the nature of her symptoms. However, her allegations that her symptoms are so severe that she cannot perform work at substantial gainful activity levels are not consistent in light of the evidence of record and activities consistent with the ability to perform a range of light work. The claimant alleged disability due to slow motor skills, lower back arthritis, degenerative disc in back, memory concerns, PTSD, persistent mood affect disorder, serve depression, mood swings and psychosis. Although the undersigned found the claimant to have severe impairments, they are not work preclusive. The clamant reported problems with motor skills, back pain, difficulty getting along with others and maintaining attention and concentration. However, the medical evidence shows that her gait was normal, her lower back was tender, but the extremities were normal. She is cooperative and her

---

[4] The Commissioner also argues that Anderson waived this claim by failing to develop it. Because the Court concludes that the argument is without merit, it does not address this assertion.

> attention and concentration were sustained. There is no evidence
> that the claimant's use of prescribed medication is accompanied by
> side effects that would interfere significantly with her ability to
> perform work within the restrictions outlined in this decision. No
> treating source refers to the claimant as having incapacitating or
> debilitating symptoms that would prevent her from returning to the
> workplace at a reduced level of exertion such as in the
> performance of light work, or has otherwise described the claimant
> as "totally and permanently disabled" by her impairments and
> complaints. In summary, the evidence does not corroborate the
> claimant's allegations of symptoms attributed to her impairments
> to an extent that would preclude the performance of light work
> with the restrictions stated above.

(ECF No. 7, PageID #: 53). Additionally, earlier in her decision, the ALJ stated that the medical

evidence was not consistent with and did not support Anderson's allegations. (ECF No. 7,

PageID #: 70). Thus, the ALJ provided much more than a boilerplate explanation.

Moreover, to the extent Anderson argues that the ALJ's explanation was not supported by

substantial evidence, the Court disagrees. As the ALJ explained, the objective evidence did not

support Anderson's allegations. Anderson had a normal gait and normal extremities. Anderson

was described as cooperative by her medical providers. There was no objective evidence

demonstrating issues with attention or concentration. *See Minor v. Comm'r of Soc. Sec.*, No. 5:18

CV 2233, 2019 WL 6525601, at *29 (N.D. Ohio Dec. 4, 2019) ("Where the objective medical

evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ 'has the

power and discretion to weigh all of the evidence and to resolve the significant conflicts in the

administrative record.'" (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.

1997))). The ALJ also relied on the fact that no medical provider opined that Anderson was

incapable of performing light work. This is substantial evidence for the ALJ's conclusion. The

Court is satisfied that the ALJ considered Anderson's subjective allegations and provided

substantial support for her decision not to accept them as accurate. Accordingly, the Court finds

no reason to disturb the ALJ's decision.

## VI.    Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's

Statement of Errors and AFFIRM the Commissioner's decision.

 Dated: July 11, 2022

s/ *Carmen E. Henderson*

CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).